1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

JANE DOE,

No.  2:25-cv-00764-DAD-SCR

12

Plaintiff,

13

v.

ORDER GRANTING PLAINTIFF'S MOTION
TO PROCEED BY WAY OF PSEUDONYM
DENYING PLAINTIFF'S REQUEST TO FILE
SUR-REPLY AND GRANTING
DEFENDANT'S MOTION TO DISMISS

14

EL DORADO COUNTY OFFICE OF
EDUCATION, et al.,

15
16

Defendants.

(Doc. Nos. 14, 17, 28)

17
18

19        This matter is before the court on plaintiff's motion to proceed pseudonymously,

20  defendant El Dorado County Office of Education's ("defendant EDCOE") motion to dismiss, and

21  plaintiff's request for leave to file a sur-reply.  (Doc. Nos. 14, 17, 28.)  On May 28, 2025,

22  defendant EDCOE's motion to dismiss was taken under submission on the papers pursuant to

23  Local Rule 230(g).  (Doc. No. 24.)  On June 4, 2025, plaintiff's motion to proceed

24  pseudonymously was taken under submission on the papers.  (Doc. No. 27.)  For the reasons

25  explained below, the court will grant plaintiff's motion to proceed pseudonymously, grant

26  defendant EDCOE's motion to dismiss, and deny plaintiff's request to file a sur-reply.

27  /////

28  /////

1

1

**BACKGROUND**

2          On March 5, 2025, plaintiff Jane Doe filed her first operative complaint initiating this

3    action against defendants EDCOE and Tarik Manasrah ("defendant Manasrah").[1]  (Doc. No. 1.)

4    In her complaint, plaintiff alleges as follows.

5          Plaintiff is a 24-year-old woman with intellectual disabilities.  (*Id.* at ¶ 3.)  Defendant

6    EDCOE provided plaintiff with education through its Pac Street Adult Transition Program.  (*Id.*

7    at ¶¶ 4, 14.)  Defendant Manasrah worked for defendant EDCOE as a bus driver and would drive

8    students, including plaintiff, between their homes and defendant EDCOE's program.  (*Id.* at ¶¶ 1,

9    4.)  Since she lived in a rural area, plaintiff was frequently the last student who was dropped off at

10   home.  (*Id.* at ¶ 1.)  On November 28, 2022, defendant Manasrah sexually assaulted plaintiff in

11   one of defendant EDCOE's vans while driving her home.  (*Id.* at ¶¶ 1–2.)  After assaulting her,

12   defendant Manasrah threatened plaintiff to "stay quiet."  (*Id.* at ¶ 2.)  On May 31, 2023, plaintiff

13   reported the attack to a caseworker.  (*Id.* at ¶ 43.)

14         When plaintiff was assaulted, it "was widely known among officials and other

15   professionals charged with making policies to ensure the safety of people with disabilities,

16   including educational officials[]" that those with intellectual disabilities are at an increased risk of

17   being sexually assaulted.  (*Id.* at ¶ 23.)  Defendant EDCOE knew that plaintiff was at risk of

18   being sexually assaulted, but despite this knowledge, failed to surveil or monitor defendant

19   Manasrah while he was transporting plaintiff alone from school.  (*Id.* at ¶ 1.)

20         Defendant EDCOE maintains a policy titled "3540 Superintendent Policy: Transportation

21   of Students" ("the transportation policy").  (*Id.* at ¶ 26.)  That policy includes a subsection titled

22   "Safety and Monitoring" which states:

23              The El Dorado County Office may install a global positioning system
               (GPS) on school buses/vans and/or student activity vehicles in order
24             to enhance student safety and provide real-time location data to
               district and school administrators and parents/guardians.
25

26

_____

27   [1]  On May 12, 2025, the Clerk of the Court entered default against defendant Manasrah. (Doc.
     No. 19.)  To date, defendant Manasrah has failed to appear in this action either through counsel or
28   on his own behalf.

2

> The Superintendent believes that the use of surveillance systems on school buses/vans will help to deter misconduct and improve discipline, ensure the safety of students and bus drivers, and prevent vandalism.  Therefore, surveillance systems may be installed and used on school buses/vans to monitor student behavior while traveling to and from school and school activities.
>
> The Superintendent or designee shall notify students, parents/guardians, and staff that surveillance may occur on any school bus/van and that the contents of a recording may be a student record and, as such, may be used in student disciplinary proceedings or referred to local law enforcement, as appropriate.  In addition, a prominent notice shall be placed in each bus stating that the bus is equipped with a surveillance monitoring system.

(*Id.* at ¶ 27.)  Defendant EDCOE implemented the transportation policy to prevent a variety of misconduct including sexual assault from occurring on its vans and buses.  (*Id.* at ¶¶ 28–29.)[2] The transportation policy was in effect on the date that defendant Manasrah sexually assaulted plaintiff and the policy had remained unchanged since 2014.  (*Id.* at ¶ 30.)  Nonetheless, when plaintiff was assaulted, defendant EDCOE had yet to install any safety monitors or surveillance measures on its vans and buses.  (*Id.* at ¶ 34.)  According to plaintiff, the failure to do so reflects that defendant EDCOE actually engaged in a "policy, custom, and practice" of not "install[ing] GPS tracking devices" on their vans to monitor drivers.  (*Id.*)  Defendant EDCOE "also maintained a policy, practice and custom of allowing intellectually disabled students to be alone, in one-on-one situations with van drivers taking them to and from educational programming, without the presence of any other adult or student, for extended periods of time."  (*Id.* at ¶ 35.)

Based on these and other allegations, plaintiff asserts the following four causes of action: (1) a 42 U.S.C. § 1983 claim brought against defendant Manasrah for government interference with bodily integrity in violation of the Fourteenth Amendment of the United States Constitution; (2) a 42 U.S.C. § 1983 claim brought against defendant EDCOE for municipal liability in connection with a policy, practice or custom; (3) a 42 U.S.C. § 1983 claim against Doe

---

[2] In January 2025 in another civil action, defendant EDCOE's director of transportation appeared at a person most knowledgeable deposition and when asked whether the transportation policy was intended to prevent sexual misconduct on defendant EDCOE's vehicles, testified "I would imagine it would aid in that." (Doc. No. 1 at ¶ 29.)  When asked whether the transportation policy was also intended to prevent sexual abuse of students, the director further testified that "it would assist in any way for the safety of students, in any way."  (*Id.*)

1    defendants for supervisor liability with respect to the acts of subordinates; and (4) a claim against

2    defendant EDCOE and Doe defendants for discrimination on the basis of gender in violation of

3    20 U.S.C. § 1681 ("Title IX").  (Doc. No. 1 at ¶¶ 50–73.)

4          Below the court will first address the applicable legal standards before to the pending

5    motions.

6                                    **LEGAL STANDARDS**

7    **A.    Motion to Proceed Under Pseudonym**

8          "[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed

9    anonymously when special circumstances justify secrecy."  *Does I thru XXIII v. Advanced Textile*

10   *Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).  "In this circuit, . . . parties [may] use pseudonyms in

11   the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person

12   from harassment, injury, ridicule or personal embarrassment.'"  *Id.* at 1067–68 (quoting *United*

13   *States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).  "[A] district court must balance the need

14   for anonymity against the general presumption that parties' identities are public information and

15   the risk of unfairness to the opposing party."  *Id.* at 1068.

16         The Ninth Circuit has identified three situations in which parties have been allowed to

17   proceed under pseudonyms:  "(1) when identification creates a risk of retaliatory physical or

18   mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and

19   highly personal nature; and (3) when the anonymous party is compelled to admit [his or her]

20   intention to engage in illegal conduct, thereby risking criminal prosecution . . . ."  *Id.* (citations

21   and internal quotation marks omitted).  A party requesting to proceed pseudonymously has the

22   burden of showing that their "need for anonymity outweighs prejudice to the opposing party and

23   the public's interest in knowing the party's identity."  *Id.* at 1068–69.  "When a party requests

24   Doe status, the factors to be balanced against the general presumption that parties' identities are

25   public information, are:  (1) the severity of the threatened harm; (2) the reasonableness of the

26   anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation."  *Doe v.*

27   *Ayers*, 789 F.3d 944, 945 (9th Cir. 2015) (internal quotation marks, brackets, and ellipses

28   omitted).

4

1    **B.    Motion to Dismiss Pursuant to Rule 12(b)(1)**

2    As courts of limited jurisdiction, federal courts are presumed to be without jurisdiction

3    over civil cases. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). The burden of

4    establishing otherwise lies with the party asserting jurisdiction. *Id.* Subject matter jurisdiction is

5    required; it cannot be forfeited or waived. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

6    Therefore, the absence of subject matter jurisdiction can be raised by either party at any stage of

7    the case through a motion to dismiss brought under Rule 12(b)(1). *Id.* at 506. In addition, the

8    district court may *sua sponte* raise the lack of subject matter jurisdiction. *Id.* at 514 ("[C]ourts,

9    including this Court, have an independent obligation to determine whether subject-matter

10    jurisdiction exists, even in the absence of a challenge from any party.").

11    Federal courts can lack subject matter jurisdiction for a number of reasons. One such

12    reason is if a defendant has sovereign immunity. If an entity entitled to sovereign immunity does

13    not waive it, damages claims against it cannot proceed, and dismissal under Rule 12(b)(1) is

14    appropriate. *See Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014); *see also Pistor v.*

15    *Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (explaining that although "sovereign immunity is

16    only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign

17    immunity from suit").

18    **C.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

19    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

20    sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

21    1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

22    sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

23    F.2d 696, 699 (9th Cir. 1988). A plaintiff is required to allege "enough facts to state a claim to

24    relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

25    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

26    the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

27    *Iqbal*, 556 U.S. 662, 678 (2009).

28    /////

5

1    In determining whether a complaint states a claim on which relief may be granted, the

2    court accepts as true the allegations in the complaint and construes the allegations in the light

3    most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

4    *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci*

5    *Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).  However, the court need not

6    assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v.*

7    *Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed

8    factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me

9    accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and

10   conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S.

11   at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

12   supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to

13   assume that the plaintiff "can prove facts that it has not alleged or that the defendants have

14   violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal.,*

15   *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

16                                            **DISCUSSION**

17   **A.      Plaintiff's Motion to Proceed Under Pseudonym**

18           In her pending motion, plaintiff argues that she should be permitted to proceed

19   pseudonymously because her complaint contains allegations of a highly sensitive nature, namely,

20   sexual assault.  (Doc. No. 14 at 3, 5.)  Plaintiff further contends that her mother, as plaintiff's

21   guardian *ad litem*,[3] should also be permitted to proceed anonymously because disclosure of her

22   mother's identity "would result in disclosure of the plaintiff's identity." (*Id.* at 4, 7–8.)  Plaintiff

23   also states that counsel for defendant[4] sent her attorneys an email on May 1, 2025 indicating that

24   /////

25   

26   [3]  On August 29, 2025, Magistrate Judge Riordan issued an order appointing plaintiff's mother,
     P.W., as plaintiff's guardian *ad litem* to prosecute this action on plaintiff's behalf.  (Doc. No. 35.)

27   

28   [4]  Plaintiff does not specify counsel for which defendant.  However, as noted above to date,
     defendant Manasrah has not appeared in this action on his own behalf or through any counsel.

                                                    6

1    they do not oppose the pending motion. (*Id.* at 2.) To date, defendants have yet to oppose

2    plaintiff's motion.

3          First, as to plaintiff's need to proceed pseudonymously, she argues that by advancing

4    allegations of sexual assault, she is the "paradigmatic example of those entitled to a grant of

5    anonymity." (*Id.* at 6.) She contends that she would be subject to harassment, ridicule, and

6    personal embarrassment should she be required to reveal her identity. (*Id.*) "Courts have

7    generally permitted plaintiffs to proceed anonymously when their claims involved allegations of

8    sexual assault or rape." *Doe v. Rose*, No. 15-cv-07503-MWF-JC, 2016 WL 9137645, at *1 (C.D.

9    Cal. June 17, 2016) (citing cases); *Doe v. Hebbard*, No. 21-cv-00039-BAS-AGS, 2021 WL

10    1195828, at *1 (S.D. Cal. Mar. 30, 2021) ("Courts have recognized the heightened need for

11    anonymity held by victims of sexual assault."). Plaintiff's fear that disclosure of her identity

12    would lead to harassment, ridicule, and embarrassment is also a reasonable justification that

13    courts have recognized in allowing plaintiffs alleging that they have been sexual assaulted to

14    proceed anonymously. *Doe v. Pasadena Hosp. Ass'n, Ltd.*, No. 2:18-cv-09648-DDP-SK, 2018

15    WL 6831533, at *2 (C.D. Cal. Dec. 26, 2018) ("The court finds that anonymity here is necessary

16    to protect Plaintiff's privacy and to protect against personal embarrassment, and further

17    humiliation and psychological harm as an alleged sexual assault victim."); *Doe v. Penzato*, No.

18    10-cv-05154-MEJ, 2011 WL 1833007, at *5 (N.D. Cal. May 13, 2011) (citation omitted)

19    ("Courts recognize that plaintiffs may be permitted to proceed anonymously where there are

20    allegations of sexual assault, and they may fear public exposure and the stigma of having been

21    victim to such a crime."). Courts have also permitted guardians *ad litem* to proceed anonymously

22    where, as here, plaintiffs allege sexual abuse. *See, e.g.*, *Doe ex rel. Doe v. Mariposa Cnty.*

23    *Unified Sch. Dist.*, No. 1:24-cv-01033-BAM, 2024 WL 4133214, at *2 (E.D. Cal. Sept. 10, 2024)

24    (allowing plaintiff's guardian *ad litem* to proceed pseudonymously in case where the plaintiff

25    alleged sexual abuse against the plaintiff's school and school's sports coach); *I. G. v. Panama-*

26    *Buena Vista Union Sch. Dist.*, No. 1:24-cv-01431-CDB, 2025 WL 435883, at *2 (E.D. Cal. Jan.

27    23, 2025) (granting a motion to allow the plaintiff's parent as guardian *ad litem* to proceed

28    */////*

1  pseudonymously).  Therefore, plaintiff's need for anonymity in this case weighs in favor of

2  granting her motion.

3          Second, plaintiff argues that defendants will not be prejudiced if the court grants her

4  motion because both defendants are aware of her and her mother's identities.  (Doc. No. 14 at 6.)

5  In a declaration submitted with the pending motion (Doc. No. 14-1 at 2), counsel for plaintiff

6  states that he has already disclosed both plaintiff's and her mother's identities to counsel for

7  defendant EDCOE.  *See Doe #1 v. Palo Alto Unified Sch. Dist.*, No. 25-cv-02120-EKL, 2025 WL

8  1900329, at *2 (N.D. Cal. May 8, 2025) (alteration in original) (internal quotation marks omitted)

9  ("Defendants will not be prejudiced at this stage because Plaintiff has already disclosed her true

10 identity and [her mother's identity] to Defendant[] prior to filing this action and will disclose

11 these identities to Defendant[] during the course of this litigation."); *J.M. v. Wyndham Hotels &*

12 *Resorts, Inc.*, No. 20-cv-00656-BLF, 2025 WL 524647, at *2 (N.D. Cal. Feb. 18, 2025) ("There

13 is no prejudice to Defendants in allowing Plaintiff to use a pseudonym at this stage of the

14 proceedings, as Defendants already know Plaintiff's identity.")  Plaintiff also contends that while

15 defendant Manasrah is likely aware of both her and her mother's identities "because he is facing

16 criminal proceedings with respect to the conduct alleged in the complaint," she is willing to

17 disclose this information to him if he actually lacks that knowledge.  (Doc. No. 14 at 6–7.)

18 Plaintiff's willingness to disclose this information to defendant Manasrah minimizes any

19 prejudice that he would suffer if he appears in this action and the court grants plaintiff's motion.

20 *Doe H. C. v. Roblox Corp.*, No. 25-cv-08076-AGT, 2025 WL 2721688, at *1 (N.D. Cal. Sept. 24,

21 2025) (concluding that the defendants would not be prejudiced since the "[p]laintiffs [had] no

22 objection to disclosing their identities to defendants as the litigation [unfolded].")  Therefore, the

23 lack of prejudice to both defendants also weighs in favor of granting plaintiff's motion.

24          Third, plaintiff contends that the public interest weighs in favor of granting her motion

25 because it would incentivize other victims who have suffered similar harms to come forward.

26 (Doc. No. 14 at 7.)  It has been recognized that preserving anonymity in cases involving

27 allegations of sexual assault serves a "strong public interest."  *See Heineke v. Santa Clara Univ.*,

28 No. 17-cv-05285-LHK, 2017 WL 6026248, at *22 (N.D. Cal. Dec. 5, 2017).  Indeed, "denial of

8

1   the use of a pseudonym may deter other people who experience sexual harassment and

2   exploitation from suing in order to vindicate their rights, merely because they fear that they will

3   be stigmatized in their community if they are forced to bring suit under their true identity." *Doe*

4   *H. C.*, 2025 WL 2721688, at *2.  Additionally, here plaintiff agrees to employ a protective order

5   if it is necessary in order for defendants to conduct discovery in this litigation.  (Doc. No. 14-1 at

6   2.)  This willingness on plaintiff's part also weighs in favor of granting the motion.  *Doe v.*

7   *Penzato*, No. 10-cv-05154-MEJ, 2011 WL 1833007, at *5 (N.D. Cal. May 13, 2011) (finding

8   plaintiff's willingness to stipulate to a protective order so defendant could conduct meaningful

9   discovery also tipped the public interest factor in favor of the granting motion to proceed under

10  pseudonym).  Accordingly, the court concludes that consideration of the public interest also

11  weighs in favor of granting plaintiff's motion.

12       For the reasons stated above, all of the relevant factors weigh in favor of granting

13  plaintiff's motion.  Therefore, the court will grant plaintiff's motion to proceed by way of

14  pseudonym.  Below, the court turns to defendant EDCOE's motion to dismiss.

15  **B.    Defendant EDCOE's Motion to Dismiss**

16       Defendant EDCOE contends that plaintiff's second and fourth causes should be dismissed

17  with prejudice because:  (1) claim two alleging that defendant EDCOE violated 42 U.S.C. § 1983

18  is barred by the Eleventh Amendment; and (2) claim four alleging gender discrimination under

19  Title IX fails to plead facts that defendant EDCOE had actual knowledge of the alleged conduct

20  while plaintiff was enrolled in its program.  (Doc. No 17-2 at 5.)  The court addresses both of

21  these arguments below.

22       1.    § 1983 Claim (Claim Two)

23       Defendant EDCOE first argues that plaintiff's § 1983 claim must be dismissed because

24  defendant EDCOE is an arm of the state which therefore entitles it to immunity from § 1983 suits

25  under the Eleventh Amendment of the United States Constitution.  (Doc. No. 17-2 at 10.)

26  Plaintiff does not oppose defendant's motion to dismiss this claim.  (Doc. No. 22 at 4.)

27       Defendant EDCOE's contention in this regard is meritorious.  *A. W. v. Santa Rosa City*

28  *Schs.*, 25-cv-00034-DMR, 2025 WL 1180725, at *5 (N.D. Cal. Apr. 22, 2025) (citing cases)

1    (recognizing that county offices of education are arms of the state entitled to Eleventh

2    Amendment immunity).  Accordingly, the court will grant defendant's motion to dismiss

3    plaintiff's § 1983 claim brought against defendant EDCOE with prejudice.  *See C.B. v. Moreno*

4    *Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 996 (C.D. Cal. 2021) (granting the defendant's

5    unopposed motion to dismiss various claims that defendant argued were barred by the Eleventh

6    Amendment); *Solesbee v. County of Inyo*, No. 1:13-cv-01548-AWI-JLT, 2014 WL 3890680, at

7    *9 (E.D. Cal. Aug. 7, 2014) (same).

8            2.      Title IX Claim (Claim Four)

9            As noted, defendant EDCOE also argues that plaintiff's Title IX claim must be dismissed

10    because in her complaint she fails to allege that defendant EDCOE had actual knowledge that

11    defendant Manasrah sexually assaulted plaintiff while transporting her home from school.  (Doc.

12    No. 17-2 at 12–13.)  Defendant EDCOE further contends that because plaintiff has failed to allege

13    its actual knowledge, she has consequently failed to adequately allege deliberate indifference on

14    defendant's part, as is required to state a cognizable Title IX claim.  (*Id.* at 13.)  Plaintiff counters

15    that defendant EDCOE mischaracterizes hers as an "individual" claim when she is actually

16    asserting a "pre-assault" Title IX claim against it.  (Doc. No. 22 at 7–8.)  A "pre-assault" claim,

17    plaintiff argues, does not require her to allege the defendant's actual knowledge.  (*Id.* at 8.)  In

18    reply, defendant EDCOE insists that even with respect to a pre-assault claim, plaintiff is still

19    /////

20    /////

21    /////

22    /////

23    /////

24    /////

25    /////

26    /////

27    /////

28    /////

1   required to allege that defendants had actual notice of discrimination to which they were

2   deliberately indifferent.[5]  (Doc. No. 25 at 5–8.)

3          Title IX provides that "[n]o person in the United States shall, on the basis of sex, be

4   excluded from participation in, be denied the benefits of, or be subjected to discrimination under

5   any education program or activity receiving Federal financial assistance[.]"  28 U.S.C. § 1681(a).

6   "A plaintiff can pursue a private right of action 'against recipients of federal education funding

7   for alleged Title IX violations.'"  *C. T. v. Oakley Union Elementary School District*, 2025 WL

8   2969294, at *3 (N.D. Cal. Oct. 21, 2025) (quoting *Karasek v. Regents of Univ. of California*, 956

9   F.3d 1093, 1104 (9th Cir. 2020) [hereinafter *Karasek I*]).  Plaintiffs alleging discrimination in

10  violation of Title IX may proceed under two theories:  pre-assault and post-assault.  *Barnett v.*

11  *Kapla*, No. 20-cv-03748-JCS, 2020 WL 7428321, at *6 (N.D. Cal. Dec. 18, 2020); *see also Doe*

12  *v. Vanderbilt University*, No. 3:23-cv-004262025 WL 2382930, at *4 (M.D. Tenn. Aug. 15,

13  2025), *appeal filed*.  A pre-assault claim is "based on an educational institution's conduct prior to

14  a plaintiff's experience of sexual harassment or assault[.]"  *Barnett*, 2020 WL 7428321, at *6.  A

15

_____

16  [5]  Plaintiff has filed a request for leave to file a sur-reply to the pending motion to dismiss.  (Doc.
    No. 28.)  She argues the request is warranted because defendant EDCOE raised, for the first time

17  in its reply brief, arguments related to both the pleading standard applicable to a pre-assault claim
    and plaintiff's use of deposition testimony in her complaint.  (*Id.* at 2.)  Plaintiff has attached her

18  proposed sur-reply brief to her request.  (*Id.* at 5–7.)  "A decision to grant or deny leave to file a
    sur-reply is generally committed to the sound discretion of the court."  *Tounget v. Valley-Wide*

19  *Recreation & Park Dist.*, No. 16-cv-00088-JGB-KK, 2020 WL 8410456, at *2 (C.D. Cal. Feb.
    20, 2020) (internal quotation marks and citation omitted).  However, "this discretion should be

20  exercised . . . only where a valid reason for such additional briefing exists" including when new
    arguments are raised for the first time in a reply brief.  *Fedrick v. Mercedes-Benz USA, LLC*, 366

21  F. Supp. 2d 1190, 1197 (N.D. Ga. 2005).  With respect to plaintiff's first point, her proposed sur-
    reply simply restates the arguments that she advances in her opposition brief.  (*Compare* Doc. No.

22  22 at 9–10, *with* Doc. No. 28 at 5–6.)  This weighs against granting her request.  *Singh v. City of*
    *Sacramento*, No. 2:15-cv-00997-AC-PS, 2019 WL 1359493, at *2 n.2 (E.D. Cal. Mar. 26, 2019)

23  ("The surreply reiterates arguments made in the original opposition, and contain no new
    arguments essential to the determination of defendant's motion.  The court therefore will

24  disregard plaintiffs' surreply.").  Additionally, as outlined below, the court will not rely on
    defendant EDCOE's contentions with respect to plaintiff's deposition transcript and its

25  incorporation into her complaint.  *See Cain v. Int'l Fruit Genetics, LLC*, No. 1:23-cv-01249-JLT-
    CDB, 2024 WL 4570605, at *2 (E.D. Cal. Oct. 24, 2024) (declining to consider a sur-reply

26  because the court did not rely upon the issue addressed in the reply in resolving the pending
    motion).  Accordingly, the court will deny plaintiff's request to file a sur-reply.

27

28

11

1    post-assault claim, also sometimes referred to as an individual claim, is "based on an educational

2    institution's deliberate indifference to a plaintiff's experience of sexual harassment or assault."

3    *Id.* The Ninth Circuit has addressed the distinction between these two theories of liability and

4    identified the elements of a Title IX claim premised on a pre-assault theory of liability as follows:

> 5    [A] plaintiff asserting a Title IX claim based on sexual harassment
> 6    committed by a faculty member or peer must demonstrate that the
>      school had "actual knowledge" of the harassment and responded with
> 7    "deliberate indifference." *See Davis*, 526 U.S. at 650, 119 S. Ct.
>      1661. This ensures that a school is "liable in damages under Title IX
> 8    only for its own misconduct," and not that of third parties. Id. at 640,
>      119 S. Ct. 1661.
>
> 9    But the calculus shifts when a plaintiff alleges that a school's
>      "official policy" violates Title IX. *See Gebser*, 524 U.S. at 290, 118
> 10   S. Ct. 1989. In that context, the school has "intentionally violate[d]
>      the statute." *Davis*, 526 U.S. at 642, 119 S. Ct. 1661. A school need
> 11   not have had actual knowledge of a specific instance of sexual
>      misconduct or responded with deliberate indifference to that
> 12   misconduct before damages liability may attach. *See Gebser*, 524
>      U.S. at 290, 118 S. Ct. 1989; *see also Mansourian v. Regents of Univ.*
> 13   *of Cal.*, 602 F.3d 957, 967 (9th Cir. 2010) ("[W]here the official
>      policy is one of deliberate indifference to a known overall risk of
> 14   sexual harassment, notice of a particular harassment situation and an
>      opportunity to cure it are not predicates for liability."). Thus, a pre-
> 15   assault claim should survive a motion to dismiss if the plaintiff
>      plausibly alleges that (1) a school maintained a policy of deliberate
> 16   indifference to reports of sexual misconduct, (2) which created a
>      heightened risk of sexual harassment that was known or obvious (3)
> 17   in a context subject to the school's control, and (4) as a result, the
>      plaintiff suffered harassment that was "so severe, pervasive, and
> 18   objectively offensive that it can be said to [have] deprive[d] the
>      [plaintiff] of access to the educational opportunities or benefits
> 19   provided by the school." *Davis*, 526 U.S. at 650, 119 S. Ct. 1661.

20   *Karasek I*, 956 F.3d at 1112 (alteration in original) (footnote omitted). Thus, in a Title IX claim

21   brought in pre-assault context, it is the school's "official policy" that allegedly intentionally

22   violates the statute. *Id.*

23          In *Karasek I* the Ninth Circuit recognized that the question posed in assessing the

24   sufficiency of the pre-assault claim in the case before it was "whether Appellants plausibly allege

25   that UC had a policy of deliberate indifference that heightened the risk of sexual harassment on

26   campus, resulting in the assaults Appellants experienced." 956 F.3d at 1114. Notably, however,

27   the court in that case declined to resolve that issue, stating:

28   /////

1

2

3

4

5

6

7

> [W]e leave to the district court to decide, in the first instance, whether Appellants' allegations are sufficient to survive a motion to dismiss under the principles we have set forth. We reiterate that Title IX does not require UC to purge its campus of sexual misconduct to avoid liability. *See Davis*, 526 U.S. at 648, 119 S. Ct. 1661. A university is not responsible for guaranteeing the good behavior of its students. The element of causation ensures that Title IX liability remains within proper bounds. To that end, adequately alleging a causal link between a plaintiff's harassment and a school's deliberate indifference to sexual misconduct across campus is difficult. Whether the FAC plausibly alleges such a link—or any of the four elements—is an issue for the district court to decide upon remand.

8    956 F.3d at 1114.

9                    a.    *Policy of Deliberate Indifference*

10    Here, the parties agree that the applicable pleading standard as to the first element of a

11    pre-assault claim requires plaintiff to allege that defendant EDCOE acted with deliberate

12    indifference. (Doc. Nos. 22 at 9; 25 at 4–5.) They disagree, however, as to what plaintiff must

13    allege that defendant EDCOE was deliberately indifferent to. Defendant EDCOE initially

14    contends that plaintiff must allege that it had actual knowledge of discrimination. (Doc. No. 25 at

15    6–7.) However, as noted above, the Ninth Circuit has clearly stated that pre-assault claims do not

16    require plaintiffs to allege that the defendant "had actual knowledge of a specific instance of

17    sexual misconduct or responded with deliberate indifference to that misconduct before damages

18    liability may attach." *Karasek I*, 956 F.3d at 1112; *see also Emily O. v. Regents of the University*

19    *of California*, No. CV-20-08159-AB-JEM, 2021 WL 1535539, at *8 (C.D. Cal. Mar. 9, 2021)

20    ("[A] pre-assault claim dispenses with the requirement that the school have 'actual knowledge' of

21    the harassment. Instead, an 'official policy' violative of Title IX that pre-exists the assault serves

22    as a substitute for notice.") (citing *Karasek I*, 956 F.3d at 1111-14). Therefore, the court rejects

23    defendant EDCOE's argument on this point as unpersuasive.

24    Nonetheless, deliberate indifference does require something "more than negligent, lazy, or

25    careless[]" conduct. *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006). In the

26    context of a pre-assault claim, "the focus is on whether the [defendant] maintained an official or

27    *de facto* policy of deliberate indifference *to reports of sexual misconduct or an obvious risk of*

28    *sexual misconduct*." *Barlow v. Washington*, No. 21-35397, 2022 WL 2256318, at *1 (9th Cir.

June 23, 2022) (citation omitted) (emphasis added); [6] *see also Karasek I*, 956 F.3d at 1112 (referring to the maintaining of a policy of deliberate indifference to reports of sexual misconduct which created a heightened risk of sexual harassment that was known or obvious).  Deliberate indifference may also be found where the defendant "recognize[s] an unreasonable risk and acts anyway, intentionally exposing the plaintiffs to that risk."  *Karasek v. Regents of Univ. of Cal.*, 534 F. Supp. 3d 1136, 1153 (N.D. Cal. 2021) (alteration in original) (internal quotation marks and citation omitted) [hereinafter *Karasek II*].

Here, plaintiff contends that the allegations of her complaint are sufficient as to the first element of her pre-assault claim because she has alleged that defendant EDCOE "maintained an official or *de facto* policy of deliberate indifference to . . . an obvious risk of sexual misconduct and maintained a policy of deliberate indifference to an environment which fosters the risk of sexual assault."  (Doc. No. 22 at 9) (internal quotation marks and citation omitted).  Plaintiff points to her allegations that the heightened risk of sexual assault is "known to officials and other professionals charged with making [safety] policies," defendant EDCOE had a policy that recognized the installation of surveillance systems in its vans would deter sexual misconduct, failed to install those surveillance systems despite that policy, and failed to investigate complaints from parents that their children were arriving late or being picked up early.  (Doc. No. 22 at 9–10.)  Nowhere in her complaint, however, does plaintiff allege with any degree of specificity that defendant EDCOE responded with deliberate indifference to any report of actual or potential sexual assault or misconduct or that the risk of such danger was known or obvious.

In support of her argument that she has adequately alleged her pre-assault claim, plaintiff cites to the decision in *Doe v. Equipo Acad.*, No. 2:20-cv-01490-KJD-DJA, 2021 WL 2768849 (D. Nev. Mar. 8, 2021).  (Doc. No. 22 at 9–10.)  There, the plaintiff asserted a pre-assault Title IX claim based upon allegations that a charter school had violated Title IX by failing to implement a custom, policy, or procedure of:  monitoring the hallways of its campus; using electronic surveillance inside its campus; for generally preventing peer-on-peer sexual harassment on

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   campus; training school personnel and monitoring the students' safety regarding the risk of peer-

2   on-peer sexual harassment.  *Equipo*, 2021 WL 2768849, at *1.  Based upon the lack of such

3   policies, the plaintiff alleged that the defendant had created "an environment of heightened risk of

4   sexual assault."  *Id.* at *4,  n.1.  The district court in *Equipo* concluded that the plaintiff had

5   plausibly alleged a cognizable pre-assault claim, relying on the Ninth Circuit's recognition in

6   *Karasek* that institutional conduct other than "deliberate indifference to reports of past sexual

7   misconduct" can serve as a basis for Title IX liability.  *Id.*

8          The undersigned is not persuaded by the district court's interpretation and application of

9   *Karasek I* in *Equipo*.  In this court's view, the allegations of plaintiff's complaint before this court

10  are insufficient with respect to the first element of a cognizable pre-assault Title IX claim under

11  *Karasek I*.  As plaintiff correctly points out, the Ninth Circuit has made clear that "deliberate

12  indifference to reports of past sexual misconduct" is not the only form of conduct that could

13  satisfy the first element of the pre-assault pleading standard.  *Karasek I*, 956 F.3d at 1112 n.5.

14  Determining what the other forms of conduct are that may be actionable by way of pre-assault

15  Title IX claim and what factual allegations are sufficient in order to pursue such a claim is,

16  unfortunately, less clear.  In short, it is a question not fully explored by federal courts to date.

17         Nonetheless, in making this determination the court begins with the recognized principle

18  that "the same standards apply in determining whether an official policy or custom exists in the

19  context of Title IX as in the context of a § 1983 claim" when analyzing the deliberate indifference

20  element of a pre-assault claim.  *D.G. v. Tucson Unified Sch. Dist.*, No. 18-cv-00583-TUC-JGZ-

21  MSA, 2020 WL 7041348, at *8 (D. Ariz. Nov. 30, 2020); *see also Karasek II*, 534 F. Supp. 3d at

22  1152 (noting that "Title IX deliberate indifference is drawn from the Section 1983 cases.");

23  *Vander Pas v. Bd. of Regents of Univ. of Wis. Sys.*, No. 21-cv-01148-JPS, 2022 WL 1597423, at

24  *5 (E.D. Wis. May 19, 2022) ("In the absence of guidance from the Seventh Circuit on Title IX

25  official policy claims, the Court so too turns to Seventh Circuit and U.S. Supreme Court

26  precedent adjudicating Section 1983 *Monell* claims."); *Kane v. Loyola Univ. of Chi.*, 22-cv-

27  06476, 2024 WL 1157396, at *9 (N.D. Ill. Mar. 18, 2024) ("In determining whether the plaintiffs

28  have plausibly alleged such a policy, the Court looks to municipal liability decisions assessing

'custom, policy, or practice' claims under § 1983.").[7]  Therefore, the court will rely upon analogous § 1983 precedent to guide its analysis as to the applicable pleading standard for the first element of a pre-assault claim.

i.    General Knowledge Allegations

Plaintiff generally alleges that the heightened risk of sexual assault that those with intellectual disabilities face is "known to officials and other professionals charged with making [safety] policies."  (Doc. No. 1 at ¶ 23.)  In support of this allegation, plaintiff cites to a report from the U.S. Department of Justice addressing that heightened risk.  (*Id.* at ¶ 21 n.1.)  Purportedly based on the cited report and the general knowledge possessed by policymakers similar to defendant EDCOE, plaintiff alleges that defendant EDCOE knew or should have known that its students were at an increased risk of being sexually assaulted.  (*Id.* at ¶ 23.)  In the § 1983 context, similar allegations have been found to fall short of plausibly alleging deliberate indifference.  As one court has explained:

> Plaintiff cites one source in support, the 2017 Human Trafficking Task Force Report, describing the presence and impact of human trafficking on the massage industry.  Aside from the report, the FAC broadly alleges that Defendants knew that most people working in the massage industry were Asian immigrant women with low levels of education who were particularly vulnerable to exploitation, and that Defendants knew that human trafficking is widespread in the massage industry.  According to Plaintiff, Defendants therefore knew or should have known that regulation of the massage industry "had to be done in a way so that no City employee could easily abuse his enforcement powers to exploit the vulnerable women working in this industry."  However, the fact that human trafficking is prevalent in the massage industry does not put Defendants on notice that unsupervised, solo male Code Inspectors are likely to extort and sexually assault massage business owners and masseuses.

*Nguyen v. City of San Jose*, No. 5:21-cv-00092-EJD, 2023 WL 8285809, at *7 (N.D. Cal. Nov. 30, 2023) (internal citations omitted).  The reasoning of the district court in *Nguyen* is instructive here.  Plaintiff merely cites to a report addressing the risk that intellectually disabled persons face

---

[7]  This principle holds true for both pre-assault and post-assault claims.  *Karasek v. Regents of Univ. of California*, 500 F. Supp. 3d 967, 984 (N.D. Cal. 2020) ("There is no reason to think that the Ninth Circuit meant something different by deliberate indifference in the pre- and post-assault Title IX contexts.").  "In a Title IX *pre-assault* case, though, it is the school's policy that is at issue, in a way reminiscent of Section 1983."  *Karasek II*, 534 F. Supp. 3d at 1152.

16

1  in being sexually assaulted and then broadly alleges that defendant EDCOE knew or should have

2  known of that risk.  (Doc. No. 1 at ¶ 23.)  However, the fact that individuals with intellectual

3  disabilities face an increased risk of being sexually assaulted does not mean that defendant

4  EDCOE was or should have been aware that, if its transportation drivers were left unmonitored,

5  plaintiff would be placed at a heightened risk of sexual assault.  Accordingly, the court concludes

6  that the conclusory allegations of plaintiff's complaint do not plausibly assert a claim that

7  defendant EDCOE acted with deliberate indifference.

8                 ii.      Failure to Monitor Drivers and Investigate Parent Complaints

9        Next, plaintiff alleges that defendant EDCOE had a policy, practice, or custom of failing

10  to verify whether its drivers finished their routes and failing to investigate complaints from

11  parents about their children arriving home late from school.  (Doc. No. 1 at ¶¶ 36–37.)  In

12  connection with these allegations, plaintiff references and incorporates the deposition testimony

13  from defendant EDCOE's director of transportation that was given in another civil action.  (*Id.* at

14  ¶ 37.)  There, the transportation director testified that when parents would complain about their

15  children arriving home late, he would tell them that the office attempted to "maintain the same

16  time," but it was "not always feasible with the lack of staff."  (*Id.* at ¶ 37.)  It is difficult to

17  conclude that these general allegations, which focus on the timeliness of the student

18  transportation provided and which in no way involved concerns expressed about possible sexual

19  abuse of students, could plausibly reflect deliberate indifference on the part of defendant EDCOE.

20  *Cf. Campbell v. Cochise County*, No. 21-cv-00002-TUC-SHR, 2023 WL 1966409, at *10 (D.

21  Ariz. Feb. 13, 2023) (finding that the plaintiff plausibly alleged a policy of deliberate indifference

22  where the complaint alleged that the defendant "by and through its policies, insufficiently

23  responded to, ignored, and/or covered up calls or reports of abuse (or reasonably suspected

24  abuse).").

25               iii.      Defendant EDCOE's Failure to Implement Its Own Policy

26        Plaintiff also alleges that defendant EDCOE failed to install surveillance measures on its

27  vehicles despite its own policy authorizing such installation.  (Doc. No. 1 at ¶ 34.)  Plaintiff

28  further alleges that the transportation policy was intended to prohibit sexual assaults from

1    occurring in its vehicles. (*Id.* at ¶ 29.) In support of these allegations, plaintiff again relies upon

2    the deposition testimony from defendant EDCOE's transportation director. (*Id.*) As noted above,

3    when asked at deposition whether the transportation policy covers "sexual abuse of students," the

4    director responded, "I would imagine it would aid in that." (*Id.*) When further asked whether the

5    policy of installing GPS trackers on vans would potentially cover sexual abuse of students, the

6    director responded, "it would assist in any way for the safety of students, in any way."[8] (*Id.*)

7    Plaintiff also alleges that there was nothing prohibiting defendant EDCOE from acting in

8    accordance with its policy. (*Id.* at ¶ 31.)

9         According to plaintiff, these allegations if proven would establish that defendant EDCOE

10   did not act in the manner authorized by its own policy. (*Id.* at ¶ 34.) Nonetheless, without more,

11   such allegations if proven would merely establish that defendant EDCOE was at most negligent,

12   falling short of conduct reflecting defendant's deliberate indifference. *See Raihan v. George*

13   *Washington Univ.*, 324 F. Supp. 3d 102, 111 (D.D.C. 2018) ("Without specific evidence beyond

14   the University's failure to implement fully its own policy, and its conduct in Ms. Raihan's case,

15   this case amounts to one of alleged official negligence, not intent. That is insufficient for Title IX

16   liability."); *see also Karasek II*, 534 F. Supp. 3d at 1146 (acknowledging the plaintiff's

17   allegations that the defendant utilized an informal complaint resolution process rather than its

18   formal processes specifically in order to avoid compliance with statutory reporting requirements

19   elevated defendants alleged actions from mere carelessness or negligence to intentional behavior

20   indicative of deliberate indifference). The court therefore concludes that plaintiff's allegations in

21   this regard are insufficient to plausibly allege deliberate indifference.

22        Finally, plaintiff makes several conclusory allegations that defendant EDCOE maintained

23   a policy, practice, or custom of failing to supervise or monitor of its drivers. (*See e.g.*, ¶¶ 33–36,

24   68.) Such "legal conclusion[s] couched as a factual allegation[s]" need not be considered in

25   determining the sufficiency of plaintiff's complaint. *Iqbal*, 556 U.S. at 678.

26   ─────────────────
27   [8] In its reply, defendant EDCOE contends that plaintiff's complaint has altered or omitted key information from the deposition testimony upon which plaintiff relies in asserting her Title IX claim. (Doc. No. 25 at 8–11.) In light of the conclusion reached in this order, the court need not
28   address defendant's objection in this regard at this time.

For all of these reasons, the court concludes that plaintiff's complaint is deficient because the allegations set forth therein, accepted as true, fail to satisfy the first element of the Title IX pre-assault claim. This conclusion is consistent with the manner in which district courts have most recently analyzed and addressed the sufficiency of the allegations of pre-assault Title IX claims. As on such court has stated:

> This is not to say that an entity can be found liable under Title IX without actual knowledge of a serious risk of "severe, pervasive, and objectively offensive" harassment. *Davis*, 526 U.S. at 650, 119 S. Ct. 1661. For an "official policy" encouraging or allowing discrimination to confer liability, a plaintiff must prove that the institution had knowledge of specific facts "which created a heightened risk of sexual harassment" and either failed to act, *Karasek*, 956 F.3d at 1114, or encouraged the practice, *Simpson*, 500 F.3d at 1177. As other courts in this circuit have held, *a plaintiff must allege that the school had notice "of a heightened risk that is specific enough to allow it to remedy such a policy." Posso*, 518 F. Supp. 3d at 699 (citing *Tubbs*, 2016 WL 8650463 at *8).

*Ware v. University of Vermont and State Agricultural College*, 722 F.Supp.3d 379, 409 (D. Vt. 2024) (emphasis added); *see also Kane*, 2024 WL 1157396, at *10 ("The Court agrees that allegations of actual knowledge of an increased risk of sexual assault are required for a pre-assault claim to proceed. But this knowledge does not need to be limited to a specific problem in a specific program. Instead, as in the municipal liability context, knowledge may be inferred from a number of previous incidents. . . . Here, allegations that Loyola systemically mishandled sexual assault claims since 2011, corroborated by the 2016 news article, the university's reporting, and the plaintiffs' individual allegations are sufficient to plausibly allege pre-assault claims based on a *de facto* policy of deliberate indifference.") Therefore, the court will grant defendant EDCOE's motion to dismiss as to plaintiff's pre-assault Title IX claim.

Nonetheless, "[t]he Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *McDow v. Harris*, No. 1:21-cv-00119-KES-SKO, 2025 WL 2591560, at *3 (E.D. Cal. Sept. 8, 2025) (internal quotation marks omitted) (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). The court is not

/////

1  convinced that the pleading deficiencies outlined above are incurable by amendment.  Therefore,

2  plaintiff will be granted leave to amend her Title IX pre-assault claim.

## CONCLUSION

For the reasons stated above,

1.    Plaintiff's motion to proceed by way of pseudonym (Doc. No. 14), is GRANTED;

2.    Plaintiff's request to file a sur-reply (Doc. No. 28), is DENIED; and

3.    Defendant's motion to dismiss (Doc. No. 17), is GRANTED as follows:

   a.  Plaintiff's cause of action brought under 42 U.S.C. § 1983 is dismissed with
       prejudice and without leave to amend.

   b.  Plaintiff's cause of action brought under 20 U.S.C. § 1681 is dismissed without
       prejudice and with leave to amend.

   c.  Plaintiff is directed to file a first amended complaint within twenty-one (21)
       days of the date of entry of this order or a statement indicating her intention not
       to do so.

IT IS SO ORDERED.

Dated:  __**November 20, 2025**__                _____

                                                DALE A. DROZD
                                                UNITED STATES DISTRICT JUDGE

20